UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES RAY LEDFORD,

        Plaintiff,

v.                            Case No.  8:20-cv-2516-JSM-SPF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## AMENDED REPORT AND RECOMMENDATION[1]

       Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and did not employ proper legal standards, it is recommended that the Commissioner's decision be reversed.

## I.

### A.    Procedural Background

       Plaintiff filed an application for a period of disability and DIB (Tr. 191-92).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 72, 89).  Plaintiff then requested an administrative hearing (Tr. 102-03).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 32-55).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 14-31).  Subsequently,

---

[1] This Amended Report and Recommendation corrects a scrivener's error in the first paragraph.

Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

B.    **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1980, claimed disability beginning March 1, 2012 (Tr. 19, 26).   Plaintiff went to college and earned a degree in building construction management (Tr. 45-46).  Plaintiff's past relevant work experience included work as a construction superintendent, a welder, a construction estimator, a driver, and a shipping clerk (Tr. 25).  Plaintiff served in the military from 2008 to 2012, when he was discharged due to injuries he suffered during a deployment to Afghanistan (Tr. 39).  Plaintiff alleged disability due to a back injury, problems with both knees, tinnitus, and post-traumatic stress disorder ("PTSD") (Tr. 209).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2023 and had not engaged in substantial gainful activity since March 1, 2012, the alleged onset date (Tr. 19).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: PTSD, lumbar degenerative disc disease, right knee and right hip degenerative joint disease, and obesity (*Id.*).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with these limitations:

"[T]he claimant cannot climb ramps, stairs, ladders, ropes, or scaffolds; limited to work on flat ground with no foot pedals; can have occasional contact with coworkers, no interaction with the public, and [ ] concentration limited to one and two step instructions." (Tr. 21).   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 25).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a price marker, hotel housekeeper, and office helper (Tr. 26).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 27).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment

that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.   *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.   42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff argues: (1) the ALJ did not identify a potential conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"); (2) the ALJ did not properly consider Plaintiff's 100 percent Veterans Affairs ("VA") disability rating in assessing Plaintiff's subjective complaints; (3) the ALJ improperly discounted the opinion of Sara Malowitz, Psy.D., who performed a January 2019 psychological consultative

examination of Plaintiff; (4) the ALJ should have considered the impact of Plaintiff's numerous doctor and therapy appointments in assessing his RFC; (5) the ALJ's RFC determination does not account for Plaintiff's moderate limitations in concentration, persistence, and pace; and (6) the ALJ erred in evaluating Plaintiff's obesity-related limitations (Doc. 21).

### A.        VE vs. DOT

The ALJ relied on the VE's testimony that Plaintiff could perform three unskilled positions: price marker and office helper, which have a reasoning level of two, and hotel housekeeper, which has a reasoning level of one (Tr. 26).  Jobs with a reasoning level of two require a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations." DICOT, App'x C, 1991 WL 688702.  In contrast, jobs with a reasoning level one require the ability to "[a]pply commonsense understanding to carry out simple one-or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id*.  Plaintiff argues there was an apparent conflict between the Dictionary of Occupational Titles' ("DOT")[2] findings regarding the jobs with reasoning level of two (price marker and office helper), and the VE's testimony (on which the ALJ relied).  *See* DOT § 209.587-034 (price marker, reasoning level 2); DOT § 239.567-010 (office helper,

---

[2] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

reasoning level 2).  Plaintiff contends that the ALJ, despite his affirmative obligation to

do so, did not identify or resolve this conflict in his decision.

An ALJ has an affirmative obligation to identify and resolve "apparent conflicts"

between the VE testimony and the DOT, otherwise the ALJ's decision is not supported

by substantial evidence. *Washington*, 906 F.3d at 1362.  Social Security Ruling ("SSR")

00-4p explains:

> When vocational evidence provided by a VE or [vocational specialist ("VS")]
> is not consistent with information in the DOT, the adjudicator must resolve
> this conflict before relying on the VE or VS evidence to support a determination
> or decision that the individual is or is not disabled.  The adjudicator will explain
> in the determination or decision how he or she resolved the conflict.  The
> adjudicator must explain the resolution of the conflict irrespective of how the
> conflict was identified.

2000 WL 1898704, at *4.[3]

This means it is not enough for the ALJ to simply ask the VE if there is an apparent

conflict; the ALJ must make a "meaningful investigatory effort" to identify or uncover

any *apparent* conflicts, explain, and resolve them. *Washington*, 906 F.3d at 1364. The court

in *Washington* goes on to explain "apparent" means that conflict is "reasonably

ascertainable or evident" and "seemingly real or true, but not necessarily so." *Id.* at 1366

(citation omitted).

---

[3] Social Security Rulings do not have the force and effect of the law or regulations but are
to be relied upon as precedents in determining other cases where the facts are basically
the same.  *Heckler v. Edwards*, 465 U.S. 870, 874 n. 3 (1984); *see also Dickson v. Comm'r of Soc.
Sec.,* 2014 WL 582885, *4 (M.D. Fla. Feb. 13, 2014) (quoting *Klawinski v. Comm'r of Soc.
Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010)) ("Social Security Rulings are agency rulings
published under the Commissioner's authority and are binding on all components of the
Administration.  Even though the rulings are not binding on us, we should nonetheless
accord the rulings great respect and deference...").

Enter *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316 (11th Cir. 2021).  On September 21, 2021 – nine days after the parties in this case submitted their joint memorandum to the Court (Doc. 21) – the Eleventh Circuit found that there is an apparent conflict between an RFC limitation of simple, routine, and repetitive tasks and jobs that require level three reasoning.  *Viverette*, 13 F.4th at 1316.  The *Viverette* panel was unable to "conclude that the ALJ's failure to address the apparent conflict as to the [level three job] was harmless." *Id.* at 1318.  First, quoting *Washington*, the panel stated it "can't disregard the error—the failure to address the apparent conflict—on the grounds that no conflict of fact existed." *Id.* (internal quotes omitted).  In other words, the court could not resolve the apparent conflict for the ALJ.

Second, the ALJ must ascertain whether the jobs the claimant can perform exist in significant numbers in the national economy.  In *Viverette*, the apparent conflict eliminated over 80 percent of the jobs the VE presented to the ALJ, and the ALJ "apparently treated the three occupations (one of which we must here assume is off the table) cumulatively for purposes of the 'significant numbers' determination, for she did not make any findings about how many jobs were available in the national economy for each of the occupations." *Id.*  In other words, in *Viverette*, the ALJ did not make a finding about how many of the reasoning level one jobs of final assembler and check weigher were available in the national economy or whether they separately or cumulatively constituted a significant number without the reasoning level three job.

Considering the record in this case and *Viverette*'s holding, the undersigned concludes the ALJ erred in failing to resolve the apparent conflict between the reasoning

level two jobs of price marker and office helper and Plaintiff's RFC limitation to "one and two step instructions." (Tr. 21).  After all, the phrase "one and two step instructions" is lifted directly from the definition of reasoning level one jobs.  *See* DICOT, App'x C, 1991 WL 688702.

Rather than dispute this, the Commissioner urges the Court to find that any error is harmless, because the VE testified that Plaintiff could perform another position (hotel housekeeper), which has a reasoning level of one, and that there are 422,000 such jobs in the national economy (Tr. 26; Doc. 21 at 27-28).  But, following *Viverette*, the Court must find otherwise.  Although apparent conflict eliminated only approximately 25 percent of the jobs available to Plaintiff (in contrast to the 80 percent of jobs the apparent conflict eliminated in *Viverette*), and the ALJ determined there were 422,000 reasoning level one jobs of hotel housekeeper in the national economy, the ALJ did not make a specific finding as to whether this number alone constituted "significant numbers" in the national economy.

The *Viverette* panel emphasized that this fact-finding function is the province of the ALJ.  "Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Viverette*, 13 F.4th at 1318 (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)). That is not to say that under no circumstances would a specific number of jobs be considered *per se* significant for step five purposes.  But, because the *Viverette* court was reluctant to do so, and because the undersigned finds that remand is appropriate as to another issue (*see infra*), the undersigned does not opine on what number of jobs would

suffice to cross the line from insignificant to significant. *See Viverette*, 13 F.4th at 1318-19 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)) ("[J]udicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and . . . [because] the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" (citation omitted)).

At this juncture, the undersigned acknowledges that remanding this case for the ALJ to simply state that the job of hotel housekeeper individually and independently exists in significant numbers may seem like a formality. But the Court is constrained by the *Viverette* decision. Consequently, on this record, the undersigned finds that the Commissioner's decision is not supported by substantial evidence and recommends remand. *See Grech v. Kijakazi*, No. 8:20-cv-1254-SPF, 2022 WL 485111, at *6 (M.D. Fla. Feb. 17, 2022) (remanding pursuant to *Viverette*); *Cisneros v. Comm'r of Soc. Sec.*, No. 2:20-cv-873-JLB-MRM, 2022 WL 354717, at *3 (M.D. Fla. Feb. 7, 2022) (same); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, at *16 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted*, No. 2:20-cv-905-SPC-MRM, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022) (same); *Rodriguez v. Kijakazi*, No. 8:20-cv-1232-WFJ-SPF, 2021 WL 6127795, at *4 (M.D. Fla. Nov. 2, 2021), *report and recommendation adopted*, No. 8:20-cv-1232-WFJ-SPF, 2021 WL 6126964 (M.D. Fla. Dec. 27, 2021) (same); *but see Denmark v. Kijakazi*, No. 8:20-cv-2852-AEP, at *8 (M.D. Fla. Mar. 21, 2022) (finding that remand pursuant to *Viverette* would be "a useless formality when substantial evidence already supports the ALJ's conclusion.").

**B.      Plaintiff's Subjective Complaints**

Plaintiff's next argument includes the kitchen sink of alleged errors but boils down to this: in finding that Plaintiff's subjective complaints "are not entirely consistent with the medical evidence" (Tr. 24), the ALJ failed to account for Plaintiff's medication side effects and his VA disability rating of 100 percent (Doc. 21 at 8-9).   The undersigned disagrees.

The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints.   The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.   *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991).   When the ALJ decides not to credit a claimant's testimony as to his pain, he must articulate explicit and adequate reasons.   *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character."   *Id.*   Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.   *Id.*   The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings.   20 C.F.R. §§ 404.1529, 416.929.   "Other evidence," again as the

regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1513, 416.913. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence.

(Tr. 24). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, it is. First, the ALJ weighed Plaintiff's VA disability rating in accordance with applicable regulations. The VA's guidelines pertaining to disability determinations vary from the SSA's sequential analysis, and the VA's assessment is not binding on the Commissioner. For claims filed *before* March 27, 2017, Social Security regulations, SSR 06-3p, and Eleventh Circuit precedent instructed the ALJ to assign "great weight" to the VA's disability rating. *See* 20 C.F.R. §§ 404.1504, 416.904; SSR 06-3p ("the adjudicator should explain the consideration given to [a disability decision by other governmental agencies] in the note of decision for hearing cases"); *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983))

(holding that "[t]he findings of disability by another agency, although not binding on the [Commissioner] are entitled to great weight.").

Citing pre-March 27, 2017 case law, Plaintiff argues that "[r]egarding the VA's analysis and determination, the ALJ was silent as to how the assessment supported Mr. Ledford's allegations." (Doc. 21 at 10). But the SSA has amended its regulations and rescinded SSR 06-3p for claims filed *after* March 27, 2017 (Plaintiff filed his claim on November 6, 2018). The new regulation provides that the SSA will not articulate its analysis of a decision made by any other governmental agency or a non-governmental entity about whether a claimant is disabled, blind, employable, or entitled to any benefits. *See* 20 C.F.R. §§ 404.1504, 416.904; 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263 (Mar. 27, 2017). In rescinding SSR 06-03p, the SSA noted that for claims filed on or after March 27, 2017, adjudicators will not explain how they weighed disability decisions from other governmental agencies and non-governmental entities, because this evidence is inherently neither valuable nor persuasive. *See* 82 Fed. Reg. 15263. Instead, the agency considers the evidence underlying the VA's disability decisions in accordance with 20 C.F.R. §§ 404.1513(a)(1)-(4) and 416.913(a)(1)-(4) (Categories of evidence).

The ALJ did not mention Plaintiff's VA disability rating but stated he considered "all the evidence" and "the entire record." (Tr. 17, 19).[4] Specifically, the ALJ summarized

---

[4] On February 12, 2019, the VA rated Plaintiff's disabilities as follows: limited motion of arm (10%), lumbosacral or cervical strain (10 %), limited flexion of thigh (10%), limited flexion of knee (10%), tinnitus (10%), sleep apnea syndrome (50%), superficial scars (10%), inflammation of the ulnar nerve (10%), and PTSD (70%) (Tr. 668-69). Before February 12, 2019, it appears Plaintiff's VA disability rating did not include PTSD (*see* Tr. 426-27).

Plaintiff's treatment by VA doctors and therapists for PTSD, anxiety, and depression and found Plaintiff's PTSD to be a severe impairment (Tr. 19-25). The ALJ stated:

> The record evidence demonstrates that the claimant has limitations due to his PTSD that was poorly managed with only counseling and was exacerbated by the near drowning of his young child. However, after he received regular treatment with counseling and psychotropic medications, he reported improvement in his mood and behavior. The residual functional capacity includes mental limitations to address his symptoms of PTSD.

(R. 24). Under the current regulatory framework, this is sufficient consideration of Plaintiff's VA disability decision. *See* 20 C.F.R. §§ 404.1504, 416.904 (ALJ not required to "provide any analysis" of VA decision but required to "considering all of the supporting evidence underlying the . . . [VA's] . . . decision" if such evidence is in the record.).

Under his "Subjective Complaints" heading, Plaintiff also argues the ALJ "did not discuss Mr. Ledford's medications or their side effects, nor did the ALJ address the fact that Mr. Ledford's care was long-standing and continuous." (Doc. 21 at 5). This argument fails. The ALJ discussed Plaintiff's history of counseling sessions and his psychiatric treatment, including his eventual improvement on psychotropic medications, and substantial evidence supports the ALJ's consideration of Plaintiff's subjective pain complaints.

For example, in August 2012, Plaintiff had a psychiatric evaluation with a VA psychiatrist and social worker during which he described bouts of rage and wanting to "stab people in the face." (Tr. 427). He said he had a "trial with psychotropic medications which he did not do well with." (Tr. 424). His psychiatrist recommended that he discontinue Bupropion (for smoking cessation) because it was making him aggressive,

continue Topiramate for his migraines and mood changes, and continue therapy (Tr. 425). Then there is a gap in Plaintiff's mental health treatment for several years.  In October 2016, Plaintiff visited a VA social worker who noted Plaintiff's comment that he struggled with PTSD symptoms after he was discharged from the military in February 2012 but "was able to effectively adjust with wife's help so as to feel at least minimally comfortable."  (Tr. 360).  Plaintiff told the social worker that seven months earlier his PTSD symptoms had returned when his one-year-old son fell into the family's pool and almost drowned.  Plaintiff performed CPR on his son, but the child suffered brain damage, and he now has seizures and needs a feeding tube (Tr. 359).

In the wake of this accident, Plaintiff's VA doctors prescribed him trazodone, hydroxyzine, and sertraline for depression and anxiety and encouraged him to continue therapy and psychiatric treatment for medication management (Tr. 798).  In January, April, and August 2019, Plaintiff reported high levels of stress and anxiety regarding his son's care and said he had difficulty controlling his anger (Tr. 601-03).  His depression worsened in August 2019 when he "learned that his daughter is pregnant, father's health is worse, and another daughter has health issues." (Tr. 840).  His social worker urged him to maintain his current treatment plan of medication management and counseling (Tr. 604, 697).

In October 2019, Plaintiff told VA psychiatrist Aurelio Galati, M.D. that "I feel good except for this back pain, but I don't complain anymore cause can't do anything about it" and that his "medications are working real good." (Tr. 798).  He denied having irritable moods, being easily frustrated, or getting angry.  In fact, Dr. Galati wrote: "He

denied any side effects or problems with the medications.  He denied feeling depressed, helpless, hopeless, or worthless.  He denied isolating himself, have low motivation, anhedonia, frequent worry, restlessness, feeling impending doom, panic symptoms or OCD/PTSD." (*Id.*).  Overall, Plaintiff's mental state was "stable." (*Id.*).

The ALJ also summarized Plaintiff's treatment for back and hip pain.  Despite that Plaintiff saw a chiropractor regularly (he had over 70 visits to a chiropractor from July 2013 to July 2014), in July 2014 Jason Napuli, D.C. of the VA stated Plaintiff had reached "maximum clinical improvement with chiropractic care." (Tr. 382, 389).  Dr. Napuli recommended facet injections but noted "there has been some difficulty reaching the veteran to set this up." (Tr. 382).  The results of an August 2013 lumbar spine MRI were normal (Tr. 382-83).  This informed Dr. Napuli's opinion that Plaintiff "is not a good surgical candidate for a variety of reasons including smoking and obesity.  He does not want surgery either and so, in light of his normal exam, and lack of 'red flags,' continued conservative management is warranted." (Tr. 385).

The ALJ summarized these treatment notes in his decision and found Plaintiff's statements about the disabling nature of his pain were inconsistent with the evidence (Tr. 23-24).  On this record, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.

### C. Weight Assigned to Medical Consultant's Opinion

Plaintiff argues the ALJ erred by finding psychologist Sara Malowitz, Psy.D.'s consultative opinion only "partially persuasive." (Tr. 25; Doc. 21 at 30-32).   The

Commissioner counters that the ALJ followed the regulations and "properly considered and articulated his evaluation" of Dr. Malowitz's opinion (Doc. 21 at 32).

Before March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

In this case, however, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim in April 2018 and alleged disability beginning July 19, 2017 (*see* Tr. 29).  As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship

with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions.  As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source.  *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[5]  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source.  *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Dr. Malowitz performed a consultative psychological examination of Plaintiff on January 28, 2019, at the agency's request (Tr. 577-80).  Plaintiff told Dr. Malowitz that he suffered from combat-related PTSD and was currently in therapy (Tr. 577-78).  He said he has nightmares, flashbacks, and is on edge in public (Tr. 578).  According to Plaintiff, his average day has little structure, but he bathes, dresses, and takes care of his basic hygiene needs independently.  Dr. Malowitz recorded that Plaintiff "is able to move around without assistance.  He has a valid driver's license and is able to drive independently without difficulty.  He is able to prepare food without assistance." (Tr. 578)

---

[5] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue.  *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff reported struggling with household chores that require grasping, bending, and lifting due to his physical limitations and said he does not grocery shop due to "hypervigilance." (*Id.*).

Dr. Malowitz assessed Plaintiff as alert and oriented to person, place, situation, and time. The "content of observed speech was noted to be relevant, coherent, and logical." (*Id.*). He had adequate attention and concentration and was able to spell "world" backwards and complete simple calculations (*Id.*). The psychologist noted that Plaintiff's receptive language, expressive language, immediate memory, and remote memory skills were all adequate. She also determined that Plaintiff had adequate social and abstract reasoning skills and insight, and he appeared to have good judgment relating to self-care and social problem solving (Tr. 579). Plaintiff's thought processes were coherent, logical, and goal directed. In the "Summary" section of her report, Dr. Malowitz's findings were more nuanced (*Id.*). She wrote that Plaintiff's "mental health symptoms based on report and clinical observations appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis is guarded." (*Id.*).

The ALJ addresses Dr. Malowicz's opinion as follows:

The claimant reported that he was being treated for PTSD with therapy due to his trauma history of combat exposure. He reported symptoms of nightmares, flashbacks, and being edgy and hypervigilant in public. His mental status exam notes that he had adequate attention and concentration, mental flexibility appeared adequate, he was alert and oriented times four, his memory was adequate, and he displayed a positive attitude. He also had good eye contact and was cooperative with unremarkable behavior. His judgment and insight appeared adequate, intelligence was approximated in the average range, ad he denied hallucinations, suicidal or homicidal ideas. . . . The opinion of consultative examiner Dr. Malowicz is partially persuasive. (Ex. 3F). The

> objective findings in the consultative exam and the treatment records support
> moderate limitation in some areas of mental functioning as noted in the "B"
> criteria above, but not to the level of severity affecting areas of mental function.
> (Ex. 2F/128-29; 3F; 6F/41-45).

(Tr. 23, 25). Here, the ALJ's consideration of Dr. Malowicz's opinion does not appear to track the new regulations' requirements. Regarding consistency, the ALJ cites to the psychiatry progress notes from the VA (summarized in the previous section) indicating Plaintiff was competent to make decisions, had fair insight and judgment, maintained adequate attention and concentration, and had an intact memory of recent and remote events (Tr. 424-25, 797-801). The ALJ's supportability analysis is lacking, however. The ALJ summarized Dr. Malowicz's "Mental Status" observations but did not mention the "Summary" section of her report, which included her findings. This omission is not error in and of itself *if* the ALJ had properly articulated his consideration of the supportability factor. But here, he offers nothing. Without an explanation of how the ALJ evaluated the supportability factor as pertains to Dr. Malowicz's opinion, the undersigned can only guess the evidence the ALJ relied on in partially discounting Dr. Malowicz's opinion. The new regulations were implemented to avoid this type of judicial speculation.

### D.    Plaintiff's Absenteeism

Next, Plaintiff argues that, in fashioning her RFC, the ALJ did not consider Plaintiff's need to miss work at least twice a month to attend counseling sessions and medical appointments (Doc. 21 at 36). The Commissioner points out that this is just another way of arguing that the ALJ's consideration of her subjective complaints is unsupported by substantial evidence (*Id.* at 38).

For starters, Plaintiff does not cite to controlling authority that requires the ALJ to explicitly address Plaintiff's need to miss work more than twice a month for medical appointments. But "whether the number of medical appointments affects [Plaintiff's] ability to work is not an appropriate consideration for assessing [his] residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) (citing SSR 96-8p);[6] *see also Daly v. Comm'r of Soc. Sec.*, No. 6:20-cv-284-GKS-EJK, 2021 WL 3668533, at * 6 (M.D. Fla. July 29, 2021). Simply put, the number of Plaintiff's medical appointments "is not a functional limitation caused by [his] impairments that would affect [his] physical or mental capabilities." *Id.* Nonetheless, while a considerable number of medical appointments do not render a claimant disabled, the ALJ is still required to consider all relevant evidence of record, including the "effects of treatment," such as the frequency and duration of treatment, during the assessment of a claimant's RFC. *See* SSR 96-8p; 1996 WL 374184.

Here, the ALJ did so. He noted that as of July 2014, Plaintiff had visited the chiropractor over 70 times in the previous 12 months, and the chiropractor did not recommend additional treatments (Tr. 25). As Plaintiff's acknowledges, many of Plaintiff's VA appointments were telephonic (Doc. 21 at 35). Nothing in the record indicates that Plaintiff was required, or would be required, to schedule his medical appointments to be held in person during working hours. As SSR 96-8p states, the RFC

---

[6] Unpublished opinions of the Eleventh Circuit are not binding precedent but may be cited as persuasive authority. *See* 11th Cir. R. 36-2; *United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

is an assessment of an individual's ability to perform sustained work-related physical activities in a work setting on a regular and continuing basis, meaning eight hours per day, five days per week, or an equivalent work schedule.  1996 WL 374184, at *2.  Plaintiff has not demonstrated that his purported absenteeism would prevent him from scheduling his appointments outside of working hours.  Finally, Plaintiff argues that the ALJ "failed to recite any good reasons for questioning the reliability of his subjective complaints, including discussing his necessary treatment schedule to maintain with his severe impairments identified by the ALJ at Step 2."  (Doc. 21 at 37-38).  But this is simply a restatement of his previous contention regarding his subjective complaints, which the Court already found lacks merit.  Plaintiff's argument fails.

    E.    **Plaintiff's RFC**

    Plaintiff argues that, in fashioning his RFC, the ALJ failed to incorporate the step two findings that Plaintiff has moderate limitations in concentration, persistence, and pace (Doc. 21 at 40).  To backtrack, when an ALJ evaluates a claimant's mental impairments at steps two and three, he or she employs a special technique (called the Psychiatric Review Technique, or PRT) to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  *See Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).  The ALJ incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process.  *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).  But the PRT is separate from the ALJ's

evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments.  The mental RFC is a more detailed assessment of the claimant's ability to function.  *Winschel*, 631 F.3d at 1180.  In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three.  *Id.*

Here, the ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; a moderate limitation in his ability to interact with others; a moderate limitation regarding concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing himself (Tr. 20-21).  The ALJ then found at steps two and three that Plaintiff had severe mental impairments but did not have an impairment or combination of impairments that met or equaled a listed impairment. Consequently, the ALJ proceeded through the sequential evaluation process and assessed Plaintiff's RFC.  The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 21).

Specifically, the ALJ found that Plaintiff's RFC limited him to "occasional contact with coworkers, no interaction with the public, and can concentrat[e] limited to one and two step instructions." (*Id.*).  This RFC accounts for Plaintiff's moderate limitations in concentration, persistence, and pace, if supported by substantial evidence.  *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (finding that RFC limitation to short, simple instructions and occasional contact with co-workers and public accounts for moderate limitations in both social functioning and ability to maintain concentration,

persistence, and pace).  Here, it is.  Notably, state agency examiners Jennifer Meyer, Ph.D. opined that Plaintiff, despite some problems concentrating, "seems capable of working without excessive supervision or assistance and working with others, and of sustaining attention to complete simple, repetitive tasks for 2-hour segments over an 8 hour work day."  (Tr. 67).  The ALJ found this opinion very persuasive (Tr. 25).

Additionally, the hypothetical question to the VE upon which the ALJ relied limited Plaintiff to unskilled work (jobs with a specific vocational preparation (SVP) of 2) (Tr. 52).  Unskilled work involves work that needs little or no judgment to do simple duties that can be learned on the job in a short period; understanding, remembering, and carrying out simple instructions; making simple work-related decisions; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  *See* 20 C.F.R. §§ 404.1568(a), 416.968(a); SSR 96-9p.  Here, the substantial record evidence summarized in the previous sections of this Report and Recommendation shows that Plaintiff's limitation to unskilled work accounts for his moderate limitation in concentration, persistence, or pace.  *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed the [plaintiff] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [plaintiff's] functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace.").

**F.      Evaluating Plaintiff's Obesity**

Lastly, Plaintiff contends the ALJ did not evaluate his obesity as required by SSR 02-1p (Doc. 21 at 43).  An ALJ is required to consider a claimant's obesity when analyzing his or her overall medical condition.  Social Security Ruling 02-1p states that an ALJ shall consider a claimant's obesity when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment prevents the claimant "from doing past relevant work and other work that exists in significant numbers in the national economy."  SSR 02-1p.

Here, the ALJ properly considered Plaintiff's obesity in accordance with SSR 02-1p.  The ALJ reviewed the treatment records from Plaintiff's VA providers, which detailed Plaintiff's 140-pound weight gain after leaving the military. The ALJ noted that Plaintiff's body mass index (BMI) was above the level considered obese.  And "[t]he claimant had a consult for biatric [sp] surgery in October 2018. (Ex. 2F/39-40).  He reported that he gained 140 pounds since he left the military, tried weight watchers for six weeks, and went through the MOVE program, but still gained weight. (Ex. 2F/86)." (Tr. 23).  The ALJ listed obesity as one of Plaintiff's severe impairments at step two but found it was not of listing severity (Tr. 19-20).   Then, despite Plaintiff's obesity and after considering Plaintiff's treatment records concerning his hip, knee, and lower back pain, the ALJ restricted Plaintiff to light work with additional limitations (Tr. 21).

Substantial evidence supports the ALJ's consideration of Plaintiff's obesity.  In October 2018, Plaintiff consulted with Lynne Olson, A.R.N.P. at the VA for a bariatric

surgery consultation (Tr. 336-37).  To qualify for the surgery through the VA, a patient had to meet three prerequisites: have a BMI greater than 40, have prior attempts at weight loss (for example, completion of the VA's 12-week MOVE program), and obtain a referral from a primary care doctor (*Id.*).  There are also absolute surgical exclusions such as smoking, drug abuse, heart failure, or a life expectancy of less than 10 years (*Id.*).  At the time, although Plaintiff had a BMI greater than 45, Ms. Olson noted he was not a surgical candidate because he had not completed the MOVE program and was a smoker (*Id.*).  It appears Plaintiff may have completed the MOVE program at some point, but he did not have another surgery consultation and his attempts at weight loss were not successful (Tr. 382).

The ALJ considered this evidence as well as the report of non-examining state agency physician John Prairie, M.D. who, in May 2019, specifically stated that he considered Plaintiff's morbid obesity as well as the other medical evidence of record in assessing his RFC for light work with postural limitations (Tr. 82).  The ALJ found this "somewhat persuasive." (T. 25) Specifically, "[t]he State's assessment is consistent with the record evidence demonstrating that that the claimant's obesity, lumbar degenerative disc disease and knee degenerative joint disease causes limitations in mobility and range of motion that warrant light exertion and postural limitations." (*Id.*)  But the ALJ assessed a more restrictive RFC:  "[T]he record evidence supports greater postural limitations as noted in the [RFC] due to the claimants physical exams noting limitations in range of motion and his lumber imaging, which supports degenerative disc disease that's likely exacerbated by his obesity." (*Id.*).  Considering this and the fact that Plaintiff does not

point the Court to any additional limitations caused by his obesity, substantial evidence supports the ALJ's obesity analysis.

<strong>IV</strong>.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.  The decision of the Commissioner be reversed and remanded.

2.  The Clerk be directed to enter final judgment in favor of the Plaintiff and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 1st day of June, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

<strong><u>NOTICE TO PARTIES</u></strong>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.